## JOHN DUKEK v. FARWELL, OZMUN, KIRK & COMPANY.

80 N. W. (2d) 53.

December 21, 1956—No. 36,966.

*John J. Sexton,* for appellant.
*T. F. Quinn,* for respondent.

KNUTSON, JUDGE.

As far as material to this decision, this is an appeal from an order denying defendant's motion for judgment notwithstanding the verdict or a new trial.

The action is one for personal injuries sustained by plaintiff when he walked into a glass panel constituting part of an entrance to defendant's building.

Defendant operates a wholesale hardware business in a multiple-story building in the city of St. Paul. In 1949, defendant rebuilt the entrance to its building. In doing so, it retained the services of a well-known and reputable firm of architects to design the entrance and prepare the plans therefor. The plans were approved by the city

architect, and the entrance was constructed on contract according to the plans.

The entrance consists of a glass exterior, a vestibule about 15 to 20 feet deep, and three glass interior doors. The lower part of the outside wall includes three glass doors with a glass panel on either side. One-quarter-inch plate glass is used throughout. The doors swing outward. The doors are each about 28 inches in width, with an aluminum or shiny metal casing or border. Each of the two outside panels is 35 inches in width. At the bottom of the doors is a metal border about four to six inches in height. The adjacent panels have a bottom border an inch or two higher than that of the doors. Below the doors, a metal threshold extends several inches inside the vestibule. Below the two outside panels is a metal foundation extending about as far as the threshold in front of the doors. Both doors and panels are about six and one-half feet in height and above both are glass panels several more feet in height.

Each door is equipped with two metal bars extending horizontally across the glass about four feet from the ground, joined together at the center with a metal plate. Joining the two bars on the side of the door opposite the hinges there is a handle, which, together with the two bars, is used in pulling the doors open from the outside. There are similar bars on the inside of each door used for pushing the door open from the inside. Above each door is a hydraulic door check plainly visible from the interior. The two exterior panels have nothing on them but are clear glass from top to bottom.

The vestibule inside this exterior entrance extends the entire width of doors and panels. Inside the vestibule are three steps extending the entire width of the vestibule, the first of which is several feet from the doors and panels. Attached to each wall are hand railings for use in ascending or descending these steps, and in line with the center of the left- and right-hand doors are two balustrades or hand railings attached to the floor of the steps. At the interior of the vestibule are three more glass doors practically identical with those described and in line with them. There are no glass panels on the sides of the interior doors.

On June 22, 1950, plaintiff was employed as a messenger boy for Western Union. He had then been employed in that capacity for about a year. On at least two previous occasions he had delivered telegrams to defendant's place of business and had used the doors involved to enter and leave the building. On the date mentioned, he entered through these doors without any difficulty and delivered a telegram. In leaving the building, he passed through the interior doors, which were then fastened open, descended the three steps, walking in a hurry, and walked into the panel on the side of the exterior doors with sufficient force to break the glass, some of which fell on his arm, causing the injuries for which he now seeks to recover.

It is the contention of plaintiff that defendant was guilty of negligence in the design of the vestibule and exterior doors. Essentially, it is his claim that the nature of the construction was such as to constitute a trap for one leaving the building.

The rules of law applicable to the care required of the owner of a building toward one who enters his place of business as a business invitee are well defined in this state. As good a statement as any is found in our case of Johnson v. Evanski, 221 Minn. 323, 326, 22 N. W. (2d) 213, 215, where we said:

"* * * defendants were under a duty to exercise reasonable care to keep their store in a reasonably safe condition for the ingress, progress, and egress of customers. * * * In order to charge defendants with negligence, a breach of the duty to keep the premises reasonably safe for plaintiff must appear. * * *

"Breach of duty such as to constitute negligence in the keeping of the premises reasonably safe is not proved by the mere occurrence of an accident. Negligence must be predicated on what should have been reasonably anticipated, not merely on what happened. * * * The duty is to guard, not against all possible consequences, but only against those which are reasonably to be anticipated in the normal course of events."

That the doors, including the handles, hydraulic check, and other features distinguishing doors from panels, were plainly apparent

to anyone approaching the exterior wall from the interior, as plaintiff was, is evident from plaintiff's own testimony. He had gone through the doors on at least two previous occasions. He entered through these doors on the day in question without difficulty. The vestibule was well lighted. He had used identical doors on other buildings. His following testimony is significant:

"Q. You noticed when you came up there that three of those, there were three doors there with three handles on the outside to pull open?

"A. Yes.

"Q. There were not any more than three handles on the outside of the door that day?

"A. No.

"Q. They are, the doors that are on the outside of the F O K entrance are similar to the ones you just went into the Court House through when you came into court today, is that right?

"A. Yes.

"Q. They are the same general type of construction?

"A. Right.

"Q. Is that right?

"A. That's right.

"Q. They are a shiny aluminum edging around the door, that's correct?

"A. Right.

"Q. And you noticed that the Court House doors swing out, is that right?

"A. That's right.

"Q. And you noticed on the outside of the Court House, there was a handle you grasp hold to pull the door open, and the same thing on the F O K doors, is that right?

"A. That's right.

"Q. And when you left the Court House at noon today, you noticed that when you went out of the Court House that there were what are known as push bars across the doors?

"A. That's right.

"Q. They are a shiny aluminum metal bar across the door, is that right?

"A. Yes.

\* \* \* \* \*

"Q. Now, as you leave the F O K offices and look at these five panels from the inside, the double bars on each of the three center panels is open and obvious, you have no trouble seeing that, that's right?

"A. Yes.

"Q. On the outside panel, that is, the one furthest to your left and the furthest to your right, there isn't anything on them at all?

"A. No.

"Q. There are no handles, no push bars, there's nothing there, is that right?

"A. Nothing.

"Q. And you can tell as you leave the F O K office that directly above the door and to the left there is a hydraulic door arrangement that allows the door to open and close in a more or less mechanical fashion, is that right?

"A. That's right.

\* \* \* \* \*

"Q. You can see those three hydraulic arrangements as you look from the inside of the vestibule out to the outside, they are all located in the upper lefthand corner of the door, is that right?

"A. That's right.

\* \* \* \* \*

"Q. Now, when you went in, you did not have any difficulty picking out one of those three doors to go in?

"A. No.

"Q. You did not make any error going in?

"A. No.

"Q. You walked right up and opened one of the three doors from the outside?

"A. Right.

"Q. It was easily observable because of the fact there was a handle right there for you to pull open?

"A. Yes."

Counsel for plaintiff has not cited us a single case in which recovery has been sustained under facts similar to those involved here, nor have we been able to find any in our legal research. To the contrary, all of the cases in which the facts are at all similar deny recovery.[1]

We fail to see how defendant can be held guilty of negligence under the facts of this case. It is inescapable that the accident happened because plaintiff did not look where he was going. In Johnson v. Brand Stores, Inc. 241 Minn. 388, 393, 63 N. W. (2d) 370, 373, we said:

"It is only when there is some distraction or other reason which will excuse the failure to see that which is in plain sight that it can be said that a person has exercised that degree of care required of an ordinarily prudent person."

Here, there was nothing to distract plaintiff, nor was there anything to prevent his seeing the door and distinguishing the doors from the adjacent panels. An examination of the record and photographs before us can only lead to the conclusion that defendant was not guilty of negligence and that plaintiff was guilty of contributory negligence as a matter of law. Under these circumstances, it was error to deny defendant's motion for a directed verdict and to deny defendant's motion for judgment notwithstanding the verdict. Judgment should be entered for defendant.

Reversed.

---

[1]Clardy v. Hudspeth, 89 Ark. 189, 115 S. W. 1134, 21 L.R.A.(N.S.) 702; Rosenberg v. Hartman, 313 Mass. 54, 46 N. E. (2d) 406; A. C. Burton Co. Inc. v. Stasny (Tex. Civ. App.) 223 S. W. (2d) 310; Acme Laundry Co. v. Ford (Tex. Civ. App.) 284 S. W. (2d) 745; Pettigrew v. Nite-Cap, Inc. (Fla.) 63 So. (2d) 492; Home Public Market v. Newrock, 111 Colo. 428, 142 P. (2d) 272.