MARTIN KRENGEL AND ANOTHER v. MIDWEST AUTOMATIC PHOTO, INC., AND OTHERS.

203 N. W. 2d 841.

January 12, 1973—No. 43539.

*McLean, Peterson & Sullivan* and *Charles T. Peterson, for* appellants.

*Regan & Regan* and *John E. Regan,* for respondents.

*John V. Norton, Robert M. Wattson,* and *Robins, Davis & Lyons,* for Minnesota Trial Lawyers Association, amicus curiae.

Todd, Justice.

Action for damages by plaintiffs for injuries sustained by Irma L. Krengel in a fall on the premises of defendant F. W. Woolworth Company on October 2, 1968. The jury returned a verdict assessing plaintiff Irma Krengel's damages in the sum of $44,000 and those of her husband, plaintiff Martin Krengel, in the sum of $10,000. The jury further found plaintiff Irma Krengel 30 percent negligent; defendant F. W. Woolworth Company 30 percent negligent; defendant Auto Photo Company 30 percent negligent; and defendant Midwest Automatic Photo, Inc., 10 percent negligent. Defendants appeal from the trial court's denial of their motion in the alternative for judgment notwithstanding the verdict, for amended findings and order for judgment, or for a new trial. We affirm.

Defendant F. W. Woolworth Company (Woolworth) had a grand opening of its new store in Mankato, Minnesota, on October 2, 1968. In response to advertising, plaintiff Irma Krengel and her friend, Joann Knewtson, together with Mrs. Knewtson's two small children, Jackie, age 3, and Chad, age 1, entered the newly opened store. The purpose of their trip was to collect free records being distributed as part of the grand opening. The women proceeded through the store to the record department and each obtained their free record. As they were preparing to leave the record department, Mrs. Knewtson suggested that pic-

tures be taken of the children at a photo booth across from the record department.

The photo booth was a self-contained unit and was standing away from the wall in an open, well-lighted area of the store. There were no railings or counters near the photo booth. The photo booth is manufactured by defendant Auto Photo Company (Auto Photo) and distributed in the Minnesota area by defendant Midwest Automatic Photo, Inc. (Midwest). Midwest had installed the booth in the Woolworth store pursuant to a contractual agreement between Woolworth and Auto Photo, who in turn sold the booth to Midwest. Once the booth was installed and operating, Woolworth was to collect the money from the booth on a regular basis and send to Midwest its share of the revenue. Woolworth was further responsible for certain elementary maintenance of the photo equipment, while Midwest was responsible for installation and repairs of the equipment. The booth installed at the Mankato store was identified as a Model 20 booth, which is 64 inches in length, 29 1/2 inches wide, 73 3/4 inches high, with an illuminated sign on the top saying, "PHOTO-GRAPHS." The booth weighs 691 pounds and is not permanently affixed to the Woolworth premises. There is a doorway entrance to the booth, and on the upper left-hand side of the booth there is a sign which says, "PHOTOGRAPHS—4 POSES," and depicts various pictures. On the right-hand side of the door is a vanity mirror and inside there is a stool for customers to sit upon while their picture is being taken. There is a narrow, yellow panel on the right-hand side of the door below the vanity mirror and a wider, wood-grain panel on the left-hand side of the door below the sign advertising the photographs. There is a mural on the back wall of the booth visible through the door and a small wainscot of the wood-grain material on the interior of the booth. The floor of the booth is black in color and is 1 1/4 inches higher than the floor area upon which it sits. The booth is trimmed in black, including the riser or step-in portion of the booth where one enters the interior. The black color of the riser tends to blend

in with the black area of the floor on the interior of the booth. On the day of the accident, the booth was sitting on a gray tile floor in the Woolworth store and the floor area was free of debris.

Mrs. Krengel and Mrs. Knewtson approached the booth area and Mrs. Knewtson placed her younger child, Chad, in the booth on the stool. She determined, however, that he was too small and did not sit high enough on the stool. She therefore requested that her daughter, Jackie, be seated first in order to hold Chad. Mrs. Krengel then picked up Jackie, who was standing beside her, by holding her under the armpits, and proceeded to the photo booth area. At this time Mrs. Krengel was wearing shoes with about 2-inch heels. As she proceeded to place the little girl on the stool inside the booth, her foot caught on the riser and she fell, sustaining a broken ankle and other injuries which required extensive care, hospitalization, and treatment. As a result of these injuries, she sustained a 40-percent disability of the lower extremity.

Mrs. Krengel testified that she did not observe the riser as she first approached the booth and that she did not see it as she was carrying the child toward the booth because her attention was focused upon the signs on the booth and the mirror. One witness, testifying on behalf of defendants, admitted that they contemplated that people would be carrying small children into the booth. There was neither a sign indicating the change in elevation nor a color change in the floor of the booth itself, other than the distinction between the floor area surrounding the booth and the riser and floor area of the booth itself.

■ Defendants first claim that they are free from negligence and plaintiff is guilty of contributory negligence as a matter of law. This court must consider all testimony in a light most favorable to the prevailing party. We need only find sufficient, competent evidence reasonably tending to support and sustain the jury's finding. Coenen v. Buckman Building Corp. 278 Minn.

193, 198, 153 N. W. 2d 329, 334 (1967); Zuber v. N. P. Ry. Co. 246 Minn. 157, 74 N. W. 2d 641 (1956).

Since this accident occurred prior to our decision in Peterson v. Balach, 294 Minn. 161, 199 N. W. 2d 639 (1972), where we abolished the distinction between invitee and licensee, the court properly instructed the jury in this case that plaintiff was a business invitee. In addition, it properly instructed the jury to consider the rules of law applicable to define the responsibility of defendants to business invitees.

■ Our court on numerous occasions has considered claims by plaintiffs who have slipped or stumbled over changed elevations in commercial store areas. In many such cases, or in cases involving similar circumstances, we have sustained a directed verdict in favor of the defendant or reversed and remanded with directions to enter judgment for the defendant. Anderson v. Sears, Roebuck & Co. 223 Minn. 1, 26 N. W. 2d 355 (1946); Dukek v. Farwell, Ozmun, Kirk & Co. 248 Minn. 374, 80 N. W. 2d 53 (1956); and cases cited therein.

From these cases the general rule has developed that the existence of a clearly visible change in the level of adjacent floors, without the inclusion of other material factors, is not evidence of negligence. In Johnson v. Evanski, 221 Minn. 323, 326, 22 N. W. 2d 213, 215 (1946), we defined the duty that an owner of a building has to one who enters his place of business as an invitee:

"* * * [D]efendants were under a duty to exercise reasonable care to keep their store in a reasonably safe condition for the ingress, progress, and egress of customers. * * * In order to charge defendants with negligence, a breach of the duty to keep the premises reasonably safe for plaintiff must appear. * * *

"Breach of duty such as to constitute negligence in the keeping of the premises reasonably safe is not proved by the mere occurrence of an accident. Negligence must be predicated on what

should have been reasonably anticipated, not merely on what happened. * * * The duty is to guard, not against all possible consequences, but only against those which are reasonably to be anticipated in the normal course of events."

We further held in Tonne v. Becker Grain & Lbr. Co. Inc. 273 Minn. 73, 76, 139 N. W. 2d 797, 799 (1966):

"* * * [T]he owner or occupant of the premises does not insure the safety of the invitee; nevertheless, he is bound to exercise ordinary or reasonable care to keep the premises in safe condition for those who come upon them by his express or implied invitation. The invitee is under the corresponding duty to exercise reasonable care for his own safety and to observe that which is obvious to the ordinarily prudent person."

■ In supporting decisions allowing verdicts in favor of plaintiffs to stand, we have indicated that distracting circumstances are factors which the jury might consider in excusing a plaintiff who did not look where he was stepping. Lincoln v. Cambridge-Radisson Co. 235 Minn. 20, 49 N. W. 2d 1 (1951); Mayzlik v. Lansing Elev. Co. 241 Minn. 468, 63 N. W. 2d 380 (1954). In Johnson v. Brand Stores, Inc. 241 Minn. 388, 393, 63 N. W. 2d 370, 373 (1954), we held that where there is some distraction or other reason which will excuse the failure to see that which is in plain sight, it can be said that a person has exercised that degree of care required of an ordinarily prudent person.

■ In examining and considering the cases dealing with comparable factual situations, we must be cognizant of the fact that these issues were considered prior to the adoption of the doctrine of comparative negligence. The instant case was decided under this doctrine.

Examination of the trial proceedings discloses sufficient and adequate evidence to sustain the findings of the jury and their apportionment of negligence. The record discloses that although the area surrounding the booth was well lighted and there was a difference in color patterns in the two floor levels, the riser was

of the same color as the floor area inside the booth and blended with it.[1] In addition, there was neither a sign warning Mrs. Krengel of the step, nor was there any attempt to paint the riser a different color in order to call attention to its location.[2] The fact that the riser was only 1 1/4 inches high contributed to the dangerous situation, as it was less noticeable than a normal step riser of 5 or 6 inches.[3] In addition, it was the first time Mrs. Krengel was on the premises and there was no evidence that she was familiar with the properties of the photo booth.[4] Rather, her attention was directed toward those signs on the booth which had originally called her attention to the booth,[5] and, in addition, she was carrying a small child as she proceeded to enter the booth, a factor which defendants admitted could happen on occasion. Defendants knew of the dangerous condition caused by the riser and took no adequate steps to protect Mrs. Krengel or others similarly situated.[6]

■ Secondly, defendants contend that the judgment entered by the trial court was contrary to both the findings of fact contained in the special verdict and to the law of comparative negligence as embodied in Minn. St. 604.01, subd. 1. The statute provides as follows:

"Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence

---

[1] See, Wood v. Prudential Ins. Co. 212 Minn. 551, 4 N. W. 2d 617 (1942).

[2] Id.

[3] See, Dickson v. Emporium Mercantile Co. Inc. 193 Minn. 629, 259 N. W. 375 (1935).

[4] Cf. Jensen v. Allied Central Stores, Inc. 283 Minn. 332, 167 N. W. 2d 739 (1969).

[5] See, Ober v. The Golden Rule, 146 Minn. 347, 178 N. W. 586 (1920).

[6] See, Rue v. Wendland, 226 Minn. 449, 33 N. W. 2d 593 (1948).

attributable to the person recovering. * * * **When there are** two or more persons who are jointly liable, contributions to awards shall be in proportion to the percentage of negligence attributable to each, provided, however, that each shall remain jointly and severally liable for the whole award."

In instructing the jury regarding the statute, the court stated:

"* * * [T]he negligence of the plaintiff shall not bar her or her husband's right to recovery if her negligence was not as great as the combined negligence of the persons against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering."

The court, in its order for judgment, reduced the jury verdict by 30 percent, that amount representing the negligence of Mrs. Krengel.

Defendants argue that since Mrs. Krengel's negligence was equal to the negligence attributed individually to Woolworth and Midwest, she was barred by the statute from recovering damages against any of the defendants. The statute clearly makes an exception for joint tortfeasors. The trial court, in its memorandum accompanying its order denying defendants' motion on which this appeal is based, points out that the jury was not requested to determine whether or not the defendants were engaged in a joint adventure. The trial court further indicates that although such a question should have been included in the special verdict, the evidence supports—if it does not demand—a finding that there was a joint adventure. Examination of the record sustains the position of the trial court.

■ In a joint adventure, the individual defendants are jointly liable as a unit because of their mutual undertaking for a common purpose and their right of direction and control over the enterprise, even though there is no actual physical control or such control was never exercised. See, Murphy v. Keating, 204 Minn. 269, 283 N. W. 389 (1939).

As stated in Rehnberg v. Minnesota Homes, Inc. 236 Minn. 230, 234, 52 N. W. 2d 454, 456 (1952):

"* * * Generally speaking, a joint adventure is created—assuming that a corporation has not been organized and the circumstances do not establish a technical partnership—where two or more persons combine their money, property, time, or skill in a particular business enterprise and agree to share jointly, or in proportion to their respective contributions, in the resulting profits and usually in the losses. In a qualified sense, a joint adventure is a limited partnership, *not limited in a statutory sense as to liability but as to scope and duration.*

"* * * No definite rule has been formulated for identifying the joint adventure relationship in all cases. Each case depends on its own peculiar facts."

The Rehnberg case outlined the elements of a joint enterprise as (1) contribution—combining either money, property, time, or skill in a common undertaking; (2) joint proprietorship and control—the parties having a proprietary interest and a right of control over the subject matter; (3) sharing of profits—but not necessarily of losses; and (4) contract—either express or implied.

The total effect of the above factors is to create a common entity whose members, for liability purposes, are indistinguishable, and which surely conforms to the prerequisites of "joint duty." [7]

The facts of this case indicate a common or joint duty to protect Mrs. Krengel, if not, in fact, a joint enterprise. Defendant Auto Photo was the exclusive manufacturer of the photo booths for all Woolworth stores, its contract with Woolworth referring to its franchisees, such as defendant Midwest, as "owner." All defendants were engaged in maintaining the studio for profit (Midwest and Woolworth directly and Auto Photo in the indirect

---

[7] For the development of this doctrine in Wisconsin, see Severson v. City of Beloit, 42 Wis. 2d 559, 167 N. W. 2d 258 (1969); Reber v. Hanson, 260 Wis. 632, 51 N. W. 2d 505 (1952).

sense that, if no profit were shown, Woolworth would probably discontinue its relationship with Auto Photo). All defendants had some control and direction over the placement and operation of the photo booth. Each defendant had contributed money, skill, time, and property to the maintenance of the booth.

The criteria set out in Rehnberg are therefore present in the instant case—contribution, control, contract, and profit-sharing having been proved by the record. As in many cases, here the whole is greater than the sum of its parts. Defendants undertook a common purpose, to install and maintain the booth and to extract a profit from the selling of photos. The resulting common duty and joint opportunity to protect customers translates into equal and overall liability.

Defendants waived their right to have the joint enterprise issue determined by the jury, and the trial court was authorized to make a determination of this issue on its own initiative. The determination made by the court is adequately substantiated by the evidence. Rule 49.01, Rules of Civil Procedure.

Since the evidence substantiates a holding that defendants were jointly liable to plaintiffs, the court's instruction on this matter was proper under our statute. In this case the negligence of plaintiff Irma Krengel should be compared to the combined negligence of the defendants rather than to the individual negligence attributed to each individual defendant.

■ Defendants further contend that the damages awarded to plaintiffs by the jury were excessive and given under the influence of passion and prejudice. The trial court in its memorandum commented that, while the damages allowed were liberal, there was adequate evidence to sustain the amount awarded. We will not disturb that holding. Koehler v. Kline, 290 Minn. 485, 185 N. W. 2d 539 (1971).

■ Finally, defendants contend that the trial court erred in commenting on and instructing the jury with respect to the legal effect of their answers to the questions submitted to the jury in the special verdict. In addition, counsel were allowed to com-

ment on the effect of these answers. The trial court adopted this procedure pursuant to the provisions of L. 1971, c. 715, which provides in part as follows:

"* * * The court shall give to the jury such explanation and instructions concerning the matters thus submitted as may be necessary to enable the jury to make its findings upon each issue, and the court shall explain to the jury the legal conclusions which will follow from its findings, and counsel shall have the right to comment thereon."

Since this court has recently adopted amendments to its Rules of Civil Procedure, specifically Rule 49.01, permitting that which was done in this case, no purpose would be served in commenting on the asserted invalidity of L. 1971, c. 715. Further, no purpose would be served in remanding the matter for trial in accordance with our newly adopted rule since the case was tried upon the exact procedures now permitted by our rule.

Affirmed.