Dale E. TROUPE, Respondent,

and

Northwestern National Insurance Company, intervenor, Respondent,

v.

SUNRISE ELECTRIC, INC., defendant and third party plaintiff, Respondent,

v.

ORRIN THOMPSON HOMES, INC., a DIVISION OF U.S. HOMES CORPORATION, third party defendant, Appellant.

No. C9–84–930.

Court of Appeals of Minnesota.

Jan. 15, 1985.

Mitchell R. Spector, Abrams & Spector, P.A., Minneapolis, for Dale E. Troupe.

Louis R. Tilton, Pustorino, Pederson, Tilton & Parrington, Minneapolis, for Northwestern Nat. Ins. Co.

Mark N. Stageberg, Craig D. Peterson, Lommen, Nelson, Sullivan & Cole, P.A., Minneapolis, for Sunrise Elec., Inc.

Eugene J. Flick, Brian N. Johnson, Jardine, Logan & O'Brien, St. Paul, for Orrin Thompson Homes, Inc., a division of U.S. Homes Corp.

Heard, considered and decided by POPOVICH, C.J., and PARKER and SEDGWICK, JJ.

## OPINION

POPOVICH, Chief Judge.

This is a personal injury action for a work-related injury on a residential construction site. Respondent Troupe was permanently injured when he backed into an exposed live electrical wire while pouring a cement basement in one of appellant's houses.

Troupe alleged his injuries were due to the negligence of the project's electrical subcontractor, respondent Sunrise Electric, Inc. Sunrise alleged negligence by the project's general contractor, appellant Orrin Thompson Homes, Inc. Sunrise sought contribution from appellant for $42,000 in worker's compensation benefits paid to Troupe.

The jury awarded Troupe $65,000 in damages and apportioned fault as follows: Troupe 0%, Sunrise Electric 20%, Orrin Thompson 80%. Sunrise paid Troupe the full damage award. Orrin Thompson contributed $42,000 to Sunrise but recouped only $27,741.01 under its worker's compensation subrogation right.

Appellant moved for judgment n.o.v. and a new trial claiming (1) the evidence did not support the verdict, (2) improper final argument by Sunrise's attorney in connection with the special verdict form, and (3) that improper contribution forced appellant to pay $14,500 more than its worker's compensation liability. The trial court denied the motion, and Orrin Thompson appealed. We affirm.

## FACTS

Dale Troupe was a cement finisher for Orrin Thompson Homes, Inc. At the time of the accident, Troupe was pouring a base-

ment in one of approximately 250 homes being constructed by Orrin Thompson in Maple Grove, Minnesota.

Orrin Thompson was the general contractor on the project. Some construction work was done directly by Orrin Thompson employees while other work was subcontracted. Electrical work for the project was subcontracted to Sunrise Electric, Inc. Orrin Thompson's area supervisor, Wayne Enos, was responsible for coordinating and scheduling all work on the project. Electrical work was completed in two phases: "rough-in" and "finish" work. Dates for completion of both rough-in and finish electrical work were set by Enos.

Rough-in electrical work was performed by Sunrise at the accident site on March 6 and 7, 1980. Consistent with their usual practice, all wires and receptacles were placed, and a bathroom circuit was installed and energized through one panel circuit. Wires were left coiled along the basement walls with exposed, uncapped ends.

Orrin Thompson scheduled Sunrise to complete the finish electrical work at the accident site on May 16 and 17, 1980. Finish work was completed in the upper portion of the house, but no work was done in the basement due to standing mud and water. Nonetheless, all remaining circuit breakers were installed and the lines energized. Sunrise did not, however, tape or cap the exposed, unconnected basement wires.

Sunrise employees were routinely instructed that breakers should be de-energized when not in use and that if circuit breakers were installed, they should be taped in the "off" position. Neither the foreman nor the electrical workers assigned to the accident site could remember if the breakers had been taped in that particular house. When Enos checked the site's circuit breaker panel after the accident, all circuits were untaped and in the "on" position.

Construction continued on the home as the floor was drying. Whenever a subcontractor asked why there was no power in a house, Enos told them to check the circuit

breakers. Most of Enos' foremen would turn circuits on and off themselves.

Troupe and his co-workers poured the basement at the accident site on June 12, 1980. As he poured cement, Troupe's shoulder touched the bare ends of a wire and he received a shock. As a result of the shock, he was permanently injured.

## ISSUES

1. Was there sufficient evidence to support the jury's verdict?

2. Were closing comments made by counsel for Sunrise Electric improper?

3. Was the trial court's application of Minn.Stat. § 176.061, subd. 6(c) (1982) incorrect or in violation of state and federal constitutions?

## ANALYSIS

1. *Sufficiency of evidence.*

Orrin Thompson claims the evidence introduced at trial was insufficient to support a finding that Orrin Thompson was 80% responsible for Troupe's injuries.

On appeal from a jury verdict, all evidence must be considered "in the light most favorable to the prevailing party," and "the verdict must be sustained unless it is manifestly and palpably contrary to the evidence." *Cobb v. Aetna Life Insurance Company*, 274 N.W.2d 911, 917 (Minn.1979). This court "need only find sufficient, competent evidence reasonably tending to support and sustain the jury's finding." *Krengel v. Midwest Automatic Photo, Inc.*, 295 Minn. 200, 204, 203 N.W.2d 841, 844 (1973).

Appellant was the coordinator of all the workers on the project. Scheduling was under the control of appellant's area supervisor, Wayne Enos. Enos knew that construction at the accident site was proceeding out of sequence. He knew that Sunrise Electric's finish work was incomplete in the basement. He saw the coiled wires hanging in the basement many times when he went to check on the heater, but

he never checked to see if those wires were connected to a live circuit. Enos never warned subcontractors or Orrin Thompson's employees that the accident site house was being built out of the normal sequence. Nor did he warn them that the finish electric work was left partially complete.

The record viewed in the light most favorable to the verdict supports the jury's findings.

2. *Counsel's comments.*

■ Appellants claim the trial court erred by permitting Sunrise Electric's attorney to comment upon the legal effect of the jury's answers to the special verdict form during closing argument. Minn.R. Civ.P. 49.01(2) allows counsel to comment upon the effect of the jury's answers to the special verdict. *See Christopherson v. Independent School District No. 284*, 354 N.W.2d 845, 847–48 (Minn.Ct.App.1984). Our review of the record shows the comments objected to were within the permissible limits of Minn.R.Civ.P. 49.01(2). The trial court did not abuse its discretion by refusing to grant a new trial under these circumstances. *See Togstad v. Vesely, Otto, Miller & Keefe*, 291 N.W.2d 686, 696 (Minn.1980); *Patterson v. Donahue*, 291 Minn. 285, 287–88, 190 N.W.2d 864, 866 (1971).

3. *Workers' compensation reimbursement.*

The trial court calculated the amount Troupe was required to reimburse appellant pursuant to Minn.Stat. § 176.061, subd. 6 (1982). Appellant claims the trial court erred because by allocating a portion of Troupe's attorney's fees to appellant, appellant is forced to pay more than its worker's compensation liability. Appellant also claims Minn.Stat. § 176.061, subd. 6 (1982) is unconstitutional under the United States and Minnesota constitutions.

■ The trial court correctly calculated the amount of reimbursement. An employer's reimbursement under Minn.Stat. § 176.061, subd. 6 is reduced by an allocable share of plaintiff's attorney's fees. *See*

*Cronen v. Wegdahl Cooperative Elevator Association*, 278 N.W.2d 102, 104–105 (Minn.1979). Minn.Stat. § 176.061, subd. 6(c) (1982) "is designed to require the employer to pay its fair share of the attorney's fee that generated the recovery from the third party." *Kordosky v. Conway Fire and Safety, Inc.*, 304 N.W.2d 616, 621 (Minn.1981); *see Cronen*, 278 N.W.2d at 104.

■ We reject appellant's constitutional claims. The Workers' Compensation Act does not violate Minn. Const. art. 1, § 8, which provides that every person is entitled to a certain remedy for all injuries and wrongs. Although the current version of Minn.Stat. § 176.061 is less favorable to employers than in the past, the Act still embraces:

a reciprocal yielding and giving up of rights existing at common law for the new and enlarged rights and remedies given by the compensation act.

*Breimhorst v. Beckman*, 227 Minn. 409, 429, 35 N.W.2d 719, 732 (1949); *see also id.* at 434–36, 35 N.W.2d at 735–36.

■ We also reject appellant's due process argument. Laws enacted by the legislature are presumed valid. *See Mathison v. Minneapolis Street Railway Company*, 126 Minn. 286, 289, 148 N.W. 71, 73 (1914).

Due process demands only that (1) the act serve to promote a public purpose, (2) it not be an unreasonable, arbitrary or capricious interference, and (3) the means chosen bear a rational relation to the public purpose sought to be served.

*Contos v. Herbst*, 278 N.W.2d 732, 741 (Minn.); *appeal dismissed*, 444 U.S. 804, 160 S.Ct. 24, 62 L.Ed.2d 17 (1979). The allocation formula set forth in Minn.Stat. § 176.061, subd. 6(c) is not arbitrary or capricious and is reasonably related to the public purpose of protecting and balancing the rights of employees, employers, and third parties.

## DECISION

Sufficient evidence supported the jury's verdict. Comments made by counsel dur-

ing closing argument were not improper. The trial court correctly calculated the amount of reimbursement under Minn.Stat. § 176.061 (1982). Minn.Stat. § 176.061, subd. 6 is constitutional.

Affirmed.