**CAL–TANK, INC., Respondent,**

v.

**INTERCO, INC., et al., Defendants,**

**Mark Rikess, et al., Appellants.**

No. C2–85–1167.

Court of Appeals of Minnesota.

Jan. 21, 1986.

Barry L. Blomquist, Jr., Blomquist & Espeset, Minneapolis, for respondent.

Robert F. Collins, Minneapolis, for defendants, appellants.

Heard, considered and decided by FOLEY, P.J., and SEDGWICK, and LANSING, JJ.

FOLEY, Judge.

Cal-Tank, Inc. sued Mark Rikess and David Anderson claiming fraud related to business dealings between the parties. Following trial by jury, a special jury verdict was returned finding that Rikess and Anderson each committed fraud. Damages were stipulated at $9,122. Rikess and Anderson appeal from the judgment and from denial of their motion for a new trial claiming that the verdict is manifestly and palpably contrary to the evidence and that any representations made to Cal-Tank did not proximately cause the damages suffered. Cal-Tank filed a notice of review asserting the trial court erred in refusing to instruct the jury on its punitive damage claim. We affirm.

## FACTS

Cal-Tank, Inc. is a California corporation that sells propane fuel tanks. Cal-Tank sued Rikess and Anderson for fraud after Auto Energy and Interco failed to pay for propane tanks shipped to them.

Auto Energy, Inc., a Minnesota corporation, was started in March 1981 by Rikess, Anderson and another to convert gasoline-powered motor vehicles to propane-powered vehicles. Interco, Inc., a Minnesota corporation, supplied car dealerships with accessories. Both corporations shared office space, telephone systems, and some of their employees. Anderson was employed by both corporations as operations manager and buyer until March 1982, after which he worked for Auto Energy alone. Rikess was the president and controlling shareholder of both corporations.

As viewed most favorably to the prevailing party, the events leading to this suit occurred as follows. In March of 1981,

Anderson, working for Auto Energy, inquired of Cal-Tank vice president Jenner about purchasing propane tanks. During the course of several phone conversations, Anderson told Jenner of Cal-Tank that: (1) Interco was the parent of Auto Energy; (2) Interco would "stand behind" Auto Energy; (3) Auto Energy was a division of Interco; (4) Cal-Tank would really be doing business with Interco; (5) Interco would be financially responsible for Auto Energy.

Cal-Tank sent a credit report form to Anderson. Anderson directed Interco's comptroller to complete this form providing information on the sales and assets of Interco and designating the form as the credit report of Interco. No financial information was sought or supplied regarding Auto Energy. Upon receipt, Jenner verified the credit information by contacting Interco's banker.

In May of 1981, Auto Energy ordered $26,000 of fuel tanks from Cal-Tank. Cal-Tank filled the order and promptly received payment. In July, Auto Energy placed, received and paid for $20,000 of tanks from Cal-Tank. During the balance of 1981, four additional orders were placed, filled and paid for. The funds for payment came both from Interco and Auto Energy. These matters are not in dispute.

This lawsuit arises from the failure of Interco and Auto Energy to pay for two January 1982 orders for tanks worth a total of $8,939. (In March 1982 a C.O.D. order was received and paid.)

In May 1982, Jenner attempted to contact Anderson dozens of times seeking payment for the January orders. On one occasion, Jenner was referred to Rikess. Rikess told Jenner that Auto Energy was broke, and that he never intended Interco to be financially responsible for Auto Energy's debts. Subsequently, Auto Energy went bankrupt. However, unused tanks from Cal-Tank were returned and credit was applied against the outstanding balance. Interco went bankrupt shortly thereafter and Cal-Tank sued Interco, Rikess and Anderson claiming fraud.

The jury was provided with written instructions and a special jury verdict form.

Approximately 40 minutes after retiring, the jury returned its verdict, finding that both Rikess and Anderson had committed fraud. Motions by Rikess and Anderson for judgment notwithstanding the verdict or a new trial were denied. Judgment was entered for Cal-Tank in the amount of stipulated damages.

## ISSUES

1. Is the jury verdict manifestly and palpably contrary to the evidence, viewing the evidence most favorably to Cal-Tank?

2. Is Cal-Tank barred from asserting error in the court's refusal to instruct the jury on punitive damages since it failed to move for a new trial?

## ANALYSIS

### I.

*Scope of review:*

The jury verdict must be sustained unless it is manifestly and palpably contrary to the evidence. *Cobb v. Aetna Life Insurance Co.*, 274 N.W.2d 911, 917 (Minn.1979). "This court 'need only find sufficient, competent evidence reasonably tending to support and sustain the jury's finding.'" *Troupe v. Sunrise Electric, Inc.*, 360 N.W.2d 633, 635 (Minn.Ct.App.1985) (quoting *Krengel v. Midwest Automatic Photo, Inc.*, 295 Minn. 200, 204, 203 N.W.2d 841, 844 (1973)). All evidence must be considered "in the light most favorable to the prevailing party," and "the verdict must be sustained unless it is manifestly and palpably contrary to the evidence." *Cobb v. Aetna Life Insurance Co.*, 274 N.W.2d 911, 917 (Minn.1979).

*Appellant argues:*

Appellant claims any misrepresentations made to Cal-Tank dealt with future intent, not current or past facts.

In Minnesota, to prove a prima facie case of fraud, it must be shown that there was a false representation by a party of a past or existing material fact susceptible of knowledge, made with knowledge of the falsity of the representation, or

made as of his own knowledge without knowing whether it was true or false, with intention to induce another to act in reliance thereon, and that the representation caused the other party to act in reliance thereon to his pecuniary damage.

*Dollar Travel Agency v. Northwest Airline,* 354 N.W.2d 880, 883 (Minn.Ct.App. 1984) (quoting *Burns v. Valene,* 298 Minn. 257, 261, 214 N.W.2d 686, 689 (1974)).

*Evidence:*

■ The claimed misrepresentations all dealt with the relationship of Interco and Auto Energy, as well as the financial status of Auto Energy at the time Cal-Tank was considering shipping fuel tanks. These misrepresentations included: Interco was the parent of Auto Energy; Auto Energy was a division of Interco; and the credit of Interco was the credit of Auto Energy. These are all representations of current fact.

The representation that Interco would be financially responsible for Auto Energy's debts and would stand behind Auto Energy may have been representations of future intent. However, these statements could also be a representation of an "existing material fact." Here, Interco often paid bills owing to Cal-Tank on Auto Energy's behalf. There was some testimony that Auto Energy had no real assets at first and that Interco purchased goods on its behalf. There were wire transfers of funds between the companies and mutual sharing of supply areas, employees, and other overhead expenses. In the context of the relationship of the two corporations, the representation that Interco was or would be financially responsible for Auto Energy's debts may have properly been viewed by the jury as a current representation rather than a promise.

*Proximate cause:*

Appellants also claim that any misrepresentations made did not cause the damage; it was the failure of Auto Energy as a business that caused the bills to go unpaid. Auto Energy never broke even. Rikess testified that Interco also suffered financially; it was not paying its bills as they came due. Auto Energy went bankrupt in the fall of 1982 and Interco went bankrupt shortly thereafter.

Cal-Tank claims it never would have extended credit to Auto Energy and would never have suffered a loss if Auto Energy had represented its true situation. However, Cal-Tank was led to believe Interco would be responsible for Auto Energy bills. Cal-Tank relied on this representation, shipping goods to Auto Energy and receiving payment from both Auto Energy and Interco, until the January orders. Cal-Tank notes that Interco had the ability to pay for the tanks until its bankruptcy in late 1982 but that Rikess refused to pay, denying Interco's responsibility for the bills. Therefore, the misrepresentation that Auto Energy was a division of Interco and that Interco would stand behind and be responsible for its debts caused the damages. The jury finding of proximate cause is therefore supported by competent evidence.

II.

*Punitive Damages:*

■ The trial court refused to let Cal-Tank ask specific questions referring to punitive damages during trial. At the conclusion of the trial, the trial court refused Cal-Tank's request for an instruction on punitive damages because it found that no clear and convincing evidence on *wilful* and *wanton* disregard of Cal-Tank's rights. *See* Minn.Stat. § 549.20, subd. 1 (1982). Cal-Tank made no post-trial motion.

"Matters involving trial procedure, evidentiary rulings, objections to the instructions, and the like are subject to review only providing there was a motion for a new trial in which such matters are assigned as error." *Antonson v. Ekvall,* 289 Minn. 536, 539, 186 N.W.2d 187, 189–90 (1971) (quoting *Heise v. J.R. Clark, Co.,* 245 Minn. 179, 191, 71 N.W.2d 818, 826 (1955)). *See also Duchene v. Wolstan,* 258 N.W.2d 601, 606 (Minn.1977).

## DECISION

The jury verdict finding Anderson and Rikess committed fraud is supported by competent evidence.

Affirmed.