PHILLIP MORAN v. NORTHERN PACIFIC RAILWAY COMPANY AND OTHERS.[1]

January 23, 1948.

No. 34,494.

[1]Reported in 31 N. W. (2d) 37.

374

*Ryan, Ryan & Ryan,* for appellant.

*L. B. da Ponte, Earl F. Requa,* and *S. G. Fitzpatrick,* for respondent Northern Pacific Railway Company.

*W. O. Bissonett,* for respondent Duluth, Missabe & Iron Range Railway Company.

THOMAS GALLAGHER, JUSTICE.

Action to recover for personal injuries sustained by plaintiff as the result of being thrown from a loaded ore car while in the employ of Hanna Iron Ore Company near the village of Crosby, Minnesota.

Plaintiff alleged that the negligence of defendants Duluth, Missabe & Iron Range Railway Company and Northern Pacific Railway Company in permitting operation of certain ore cars with defective brakes, in violation of the requirements of the federal safety appliance acts, 45 USCA, § 11, and the negligence of defendants Frank Stimac and Fred Johnson, his fellow employes, in failing to warn him of an impending collision between such ore cars, were the proximate and concurrent causes of his injuries.

At the trial, his action as to Stimac and Johnson was dismissed on motion of said defendants because of the absence of any evidence

against them establishing the negligence relied upon. The court submitted to the jury the question of the negligence of the defendant railroads, and the jury returned a verdict in favor of such defendants. This appeal is from a subsequent order denying plaintiff's motion for a new trial.

Following submission of the case to the jury and after it had deliberated thereon for some five hours and stood ten to two in favor of returning a verdict for defendants, the following proceedings took place: The foreman of the jury requested the bailiff in charge to telephone the trial judge, who was then at home, and ask him: "Whether, if the jury let the two railroad companies out, if Moran could recover his damages from the mining company?" The bailiff thereupon telephoned the judge at his home and repeated this query to him. The trial judge then told the bailiff "that the jury had nothing to do with the mining company in the case, then being considered, and so far as that case was concerned, that it should decide the case on the evidence heard in court." The bailiff then called the jury foreman from the jury room and stated in substance: "I phoned the judge and he said to tell you that so far as this case is concerned you have nothing to do with the mining company. That you should decide this case on the evidence that you heard in court." This information was then conveyed to the rest of the jury by the foreman. Immediately subsequent to the above conversations, the trial judge returned to the courthouse, summoned the bailiff, and sent him to the jury room to tell the jury that if any of its members required further instructions or wished further information he, the judge, was present to give the same in open court. Shortly thereafter, the judge requested the bailiff to advise the jury that if any individual juror desired additional instructions he might make such a request, and that the judge was present to give the same in open court. In both instances, the bailiff was advised, and so informed the court, that no further instructions were required by any member of the jury.

Some two and one-half hours later the jury agreed upon a verdict for defendants. Prior to the time the jury's sealed verdict was received and opened by the court, counsel for plaintiff was advised of

the proceedings above outlined, but he made no objection thereto at the time the verdict was opened.

Subsequently, plaintiff moved for a new trial, on the ground among others that the foregoing proceedings constituted an irregularity by which plaintiff was deprived of a fair trial. In its memorandum attached to and made a part of the order denying such motion, the trial court stated:

"* * * There can be no question that the communications between the bailiff and the foreman of the jury were an irregularity in the proceedings of the court * * *, that such irregularity cannot be approved, and that the trial court, the writer of this memorandum, is subject to criticism for making any remark to the bailiff other than to advise him not to communicate with the jury except in matters relating to requested instructions or concerning the jury's desire to deliver its verdict in open court.

     \*     \*     \*     \*     \*

"Considering the foregoing authorities [previously cited by the trial court in its memorandum], it appears that the law, in this state at least, in civil actions, is that an irregularity is not a ground for a new trial unless that irregularity resulted in prejudice to the party requesting the new trial. * * *

     \*     \*     \*     \*     \*

"Neither from the trial court's observation nor from the affidavits submitted is it apparent that there is any reasonable ground for concluding that the irregular communications affected the verdict, nor in any way was prejudicial to the plaintiff. For the reasons given and upon the authorities cited, the court is of the opinion it would not be justified in granting a new trial."

On appeal, plaintiff confines his case to this one assignment of error, viz.: That the unauthorized communications between the trial judge and the jury, as outlined above, were irregularities which deprived him of a fair trial and hence constituted reversible error.

M. S. A. 547.01 provides:

"A verdict, decision, or report may be vacated, and a new trial granted, on motion of an aggrieved party, for ' * * *

"(1) Irregularity in the proceedings of the court, referee, jury, or prevailing party, * * * whereby the moving party was deprived of a fair trial;"

It is clear therefrom that an irregularity in the proceedings is not in itself ground for a new trial unless such irregularity materially affected the moving party's rights and deprived him of a fair trial. Here, it is not contended that the instructions which were ultimately communicated to the jury through the bailiff were erroneous, nor could it be held that they were such. Obviously, had the trial court submitted such instructions to the jury in its original charge, no error could be claimed in connection therewith, for in determining the issues presented the jury was not at liberty to speculate upon evidence not presented to it, nor to reach its decision because of its belief that others, not parties to this action, might ultimately be held liable for plaintiff's damages.

The irregularity complained of here is that the instruction should have come from the court, and not from the bailiff. The law is well settled in this state that even under such circumstances such irregularities will not be grounds for setting aside a verdict unless material prejudice is shown to have resulted therefrom, and that the determination of this question ordinarily rests in the discretion of the trial court. This rule is expressed in State v. Soltau, 212 Minn. 20, 28, 2 N. W. (2d) 155, 160, wherein we stated:

"* * * The rule now is that the verdict will not be set aside unless prejudice is shown. Whether there was such a communication [from the bailiff to certain jurors] and whether it caused prejudice are fact questions to be determined by the trial court in the exercise of sound discretion."

Numerous prior decisions of this court have established and applied the doctrine thus expressed in the Soltau case. See, Oswald v. Minneapolis & Northwestern Ry. Co. 29 Minn. 5, 11 N. W. 112; State v. Brodt, 150 Minn. 431, 185 N. W. 645; State v. Broughton, 154 Minn.

390, 192 N. W. 118; State v. McReady, 154 Minn. 366, 191 N. W. 816; and State v. Kraus, 175 Minn. 174, 220 N. W. 547.

■ Plaintiff relies on Hoberg v. State, 3 Minn. 181 (262), and State v. Clow, 215 Minn. 380, 10 N. W. (2d) 359. The Hoberg case expressed a rule contrary to the prevailing rule, but it was overruled in the Oswald case, and the doctrine therein expressed has not been adhered to in any decision since.

The Clow case involved a somewhat different question, the violation of the constitutional right of an accused to be confronted with the witnesses against him. There, the jury was taken to view the *locus in quo*. No reporter was present at such viewing, although the record indicated that the trial court made certain comments in describing the *locus in quo*. No transcript of the court's remarks at such viewing were available to the accused. The matter being a criminal proceeding, we held that the constitutional right of an accused to be confronted with the witnesses against him was violated by the proceedings described. No such constitutional violation is involved in the instant case.

On the record here presented, we cannot say that the trial court abused its discretion in concluding, as stated in its memorandum, that "the irregular communications [neither] affected the verdict, nor in any way was prejudicial to the plaintiff." Since, as we stated in State v. Soltau, 212 Minn. 20, 2 N. W. (2d) 155, *supra,* the ultimate determination of this question rests in the sound discretion of the trial court and there is apparent here no abuse of such discretion, we must hold that the proceedings as outlined herein, while irregular, were not such as to materially prejudice plaintiff so as to constitute reversible error justifying a new trial.

Affirmed.