Mae M. CAMBERN, Appellant,

v.

SIOUX TOOLS, INC., defendant and third-party plaintiff, Respondent,

v.

BAYLINER BOATS, third-party defendant, Respondent.

No. 81–495.

Supreme Court of Minnesota.

Aug. 31, 1982.

Grose, Von Holtum, Von Holtum, Sieben & Schmidt and Douglas E. Schmidt, Minneapolis, for appellant.

Lasley, Gaughan, Reid, Stich & Angell and John F. Angell, Minneapolis, for Sioux Tools, Inc.

Chadwick, Johnson & Bridell and Wayne Tritbough, Minneapolis, for Bayliner Boats.

SIMONETT, Justice.

Plaintiff employee in a products liability action appeals from a verdict finding her fault greater than the manufacturer's but less than her employer's, claiming the fault of the manufacturer and the employer should have been aggregated and also claiming the trial court committed reversible error in its response to an inquiry by the jury during its deliberations. We affirm.

On December 6, 1978, Mae Cambern was drilling holes into the dashboard of a fiberglass boat for her employer, Bayliner Boats, using a high-power electric drill with a circular saw blade made by defendant Sioux Tools, Inc. This was a new assignment for Ms. Cambern. On her second or third hole, the saw bit of the drill stuck in the hole, the forward handle of the drill slipped, and the drill body twisted violently. The twisting of the drill caused a twisting of Ms. Cambern's wrist and arm, resulting in a disabling injury to her arm. Ms. Cambern received about $27,000 in workers' compensation benefits. She then sued defendant Sioux Tools, Inc., for making a defective tool. In turn, Sioux Tools brought in the employer, Bayliner Boats, Inc., as a third-party defendant for contribution under *Lambertson v. Cincinnati Corp.*, 312 Minn. 114, 257 N.W.2d 679 (1977).

Proof at trial went to show that the forward handle on the drill, critical in holding it steady, was attached to the drill only by a metal strap or collar, and the strap frequently came loose because of the drill's vibrations and often required tightening by the operator. Plaintiff's expert testified to the hazards this kind of handle could foreseeably create. There was also testimony, disputed, that plaintiff had not been properly trained by the employer to operate the drill. Further, to show better design feasi-

bility, the jury was shown a modification made to the drill by the employer after the accident consisting of an anchoring mechanism to prevent the forward handle from slipping when the nut and bolt holding the strap became loose.

The jury found plaintiff Cambern 35% at fault and defendant manufacturer, Sioux Tools, 20%;[1] it found Bayliner, the employer, 45% at fault; and it found damages of $100,000. Plaintiff argued that for comparison purposes the fault of defendants should have been aggregated. The trial court disagreed. Consequently, since plaintiff's fault was more than that of defendant Sioux Tools, and since, by reason of the Workers' Compensation Act plaintiff had no cause of action against her employer, Bayliner, the trial court awarded no damages to plaintiff.

During its deliberations the jury passed a note to the bailiff requesting additional instructions on causation. The judge received the request in chambers and orally instructed the bailiff to tell the jury that no additional instructions would be given. No record was made. Although the exact time of this incident is unclear—whether it occurred shortly after the jurors went to the jury room or later—the substance of the interchange, as established by affidavits and the judge's memo, is not in dispute. In her motion for a new trial, plaintiff claimed this handling of the jurors' request was also prejudicial error. Plaintiff appeals here from the trial court's denial of her motions for a new trial or judgment notwithstanding the verdict.

I.

First, we hold that the trial court's handling of the jury's request for additional instructions was not, in this case, prejudicial error.

The jury sent a note to the judge requesting supplemental instructions on the causation issue. As described in the affidavits, and not substantially disputed by either

[1]. The case against the manufacturer was submitted on both strict liability and negligence, and the jury found Sioux Tools liable on both counts.

party, the judge refused to give additional instructions, and instructed the bailiff to tell the jury to continue its deliberations based on the prior instructions. Counsel were not notified. The jury's note was neither kept nor recorded, nor the judge's response recorded. The trial court acknowledges the substance of appellant's description of the encounter but did not view what had occurred as so serious as to warrant a new trial. There is no claim that the original instruction given the jury on causation was not correct.

Appellant Cambern claims prejudice in four ways: by the judge's failure to communicate in open court; by failure to notify counsel of the jurors' request; by failure to record the proceedings; and by allowing the bailiff to communicate the denial of the jury's request. Appellant argues that this action by the judge violates the Minnesota Civil Trialbook as well as our common law. Sioux Tools, on the other hand, says that since the court merely refused to give further instructions there could not have been any prejudice to appellant.

Appellant is correct in claiming that the judge's action does not follow the practice recommended in Procedure 34 of the Minnesota Civil Trialbook, in that counsel were not notified of the jury's request (they had made arrangements to stand by) nor was the exchange made a part of the record.[2] The Trialbook, however, only purports to set out recommendations to standardize trial procedures and does not provide sanctions for any inappropriate deviation from those recommendations. While we agree that Procedure 34 sets out a proper practice for trial courts to follow, we must still look to our case law for resolution of this question.

■ Our cases distinguish between instances where the trial court gives additional instructions to the jury during its deliberations and where it refuses to do so. Generally, if the trial court gives new instructions to the jury without proper procedural safeguards, it is grounds for a new trial. *Ramfjord v. Sullivan*, 301 Minn. 238, 250, 222 N.W.2d 541, 549 (1974); *Cronquist v. City of Minneapolis*, 258 Minn. 30, 102 N.W.2d 512 (1960). See *Gersdorf v. R. D. Werner, Inc.*, 316 N.W.2d 517 (Minn.1982). But we have also repeatedly held that an informally delivered refusal to give additional instructions is not ordinarily reversible error. Thus, in *Moran v. Northern Pacific Ry. Co.*, 225 Minn. 373, 31 N.W.2d 37 (1948), the judge refused to give further instructions and ordered the bailiff, by telephone, to convey this message orally to the jury. We held that such an "irregularity" would not be grounds for a new trial unless it materially affected the party's rights and thus deprived the party of a fair trial. We also said that since a grant of a new trial is within the discretion of the trial court, a denial of such a request would not be reversed unless the denial was an abuse of that discretion. *Moran, supra*. As to application of a "harmless error" approach, see *State v. Schifsky*, 243 Minn. 533, 546, 69 N.W.2d 89, 96 (1955); *Booth v. Spindler*, 261 Minn. 79, 110 N.W.2d 889 (1961). See also Annotation, 41 A.L.R.2d 288 (1955).

■ Under the circumstances of this case, we hold that the trial court's error in not notifying counsel of the jury's request and not recording the court's exchange with the jury was not prejudicial and that the trial court did not exceed its discretion in denying a new trial on this ground.

**2.** Procedure 34 of the Minnesota Civil Trialbook, published in the 1982 Minnesota Rules of Court at 373, provides:

If the jury has a question regarding the case during deliberations, the trial judge shall instruct the foreperson to reduce it to writing and submit it through the bailiff. Upon receipt of such a written question, the trial judge shall review the propriety of an answer with counsel, unless waived, outside the hearing of the jurors in a reported conference. Such writing shall be made a part of the record and the answer given in open court, absent a stipulation to the contrary.

The Trialbook was adopted by the Annual Conference of Judges in June 1980 and is stated to be "a declaration of practical policies and procedures to be followed" and that it was written "to standardize practices and procedures throughout the state," and "[i]t is recommended that the policies and procedures be generally and uniformly used."

We do think, however, that Procedure 34 of the Trialbook sets out the appropriate procedure to follow in these situations. What is always troublesome in these cases is that the aggrieved party must show the error was not harmless, and yet it is difficult to do so in the absence of a record of what transpired. Here, however, there is little dispute over the facts of the unrecorded encounter; the given instruction was admittedly correct; it is not apparent how the presence of counsel would have made a difference; and there is no reason to believe that the causation issue was not fairly tried.

## II.

We next consider the aggregation of fault issue. The jury found plaintiff Cambern 35% at fault, the manufacturer Sioux Tools only 20%, and the employer Bayliner 45%. The trial court refused plaintiff's request to aggregate, in whole or in part, the fault of the two defendants. We affirm these rulings.

■ Absent proof of an economic joint venture, current Minnesota law is clear that defendants' fault is not to be aggregated in applying our Comparative Fault Statute, Minn.Stat. § 604.01 (1980). In *Krengel v. Midwest Automatic Photo, Inc.*, 295 Minn. 200, 203 N.W.2d 841 (1973), we allowed aggregation where the four criteria for a joint adventure were met. In *Marier v. Memorial Rescue Service*, 296 Minn. 242, 207 N.W.2d 706 (1973), we refused to extend joint adventure aggravation to cases where defendants are merely "concurrently negligent," since "[s]uch an extension would clearly be a change in the substantive rule established by our statute and is properly a function of our legislature." *Marier*, 296 Minn. at 246, 207 N.W.2d at 709.

Appellant Cambern makes an argument for another aggregation "exception" to the Comparative Fault Statute.[3] Her first con-tention, if we understand it correctly, is that Bayliner and Sioux Tools had "joint and overlapping" duties to the employee, and because the manufacturer's duty is nondelegable, aggregation here is appropriate. She argues that the manufacturer had a duty to make a safe product and to warn against dangers inherent in it, and that the employer had a duty also to warn and "to redesign the product so as to correct the defect." "Consequently," her argument continues, "the employer's negligence consists of failure to do what the manufacturer should have done in the first place." From this, appellant concludes the "joint" fault of the two defendants "should be considered as a unit for comparison purposes."

Appellant then, however, seems to weaken her argument by conceding that not all the fault of the two defendants may overlap, only some of the fault. Thus she submitted requested instructions to the court (which the court refused) which would have required the jury to answer questions as to the "separate and individual" fault of both Sioux Tools and Bayliner, then the "joint fault" of Bayliner and Sioux Tools, then plaintiff's fault, and then two separate comparative fault questions. Finally, appellant attempts to bolster her argument by contending that, in avoiding aggregation, Sioux Tools is "using" Bayliner's workers' compensation immunity to shield itself from that portion of the employer's fault for which it should be liable.

■ We do not find these arguments convincing. Putting to one side the nearly impossible task of having a jury sort out what portions of fault "overlap," the short answer is that each defendant here owed plaintiff separate, distinct duties, duties that differed in nature and degree. Bayliner owed Mae Cambern a duty of providing her a safe workplace, which included proper supervision and instructions about machinery and tools used by her. Sioux Tools

---

3. Our statute says that a plaintiff recovers if the contributory fault of the plaintiff "was not greater than the fault of the *person* against whom recovery is sought * * *." Minn.Stat. § 604.01 (1980) (emphasis added). Respon-dent, pointing out that "person" is used in the singular, argues this means that a plaintiff's fault is to be compared with each individual's fault.

owed a duty to plaintiff to provide her with a reasonably safe product. Sioux Tools failed to design and make a handle that would withstand the drill's vibrations, and Bayliner apparently failed to instruct plaintiff about keeping the handle tight. As the Wisconsin Supreme Court pointed out in *Reiter v. Dyken*, 95 Wis.2d 461, 290 N.W.2d 510, 514 (1980), "more is required than identical acts or omissions before the negligence of separate individuals may be combined for comparison purposes in determining liability." Here Bayliner and Sioux Tools are simply concurrently negligent.

The other aspect of appellant Cambern's argument is that to deny aggregation unfairly extends the employer's immunity from suit to the manufacturer. She says she cannot sue her employer, yet the defendant manufacturer is able to bring the employer in as a third-party defendant and the "net effect is to allow the manufacturer to 'borrow' some of that immunity." But this "borrowing" effect only occurs because plaintiff assumes there is "overlapping" fault, a notion we discard.

The reason plaintiff cannot recover in this case is not because her employer is immune from her suit but because plaintiff was found by a jury to be more negligent than the defendant manufacturer. Regardless of Bayliner's status, plaintiff could not recover. Even if Bayliner were not her employer, under *Marier* the defendants' fault would not be aggregated. The only difference to plaintiff were Bayliner not her employer would be that she would have collected her jury verdict from Bayliner rather than workers' compensation, but we do not understand plaintiff to question this trade-off. The compromise effect of the workers' compensation system is well documented, and it would not be appropriate to try to counteract the system's consequences by creating an exception to section 604.01.

The dissenting opinion puts the issue in better focus. The dissent points out that since *Lambertson v. Cincinnati Corp.*, 312

Minn. 114, 257 N.W.2d 679 (1977), the manufacturer has had a contribution claim against the plaintiff's employer and, therefore, can sue the employer as a third-party defendant. Thus, instead of a lawsuit in which the jury compares only the fault of the plaintiff and the defendant manufacturer, now, since *Lambertson*, the fault of still another actor, the employer, is to be compared along with that of plaintiff and the manufacturer. The dissent argues this is unfair since, presumably, if the employer were not in the case it would be easier to succeed against the defendant manufacturer on the comparison fault question. Of course, even if defendant Sioux Tools had not brought in the employer as a third-party defendant, the issue of the employer's fault would still have been submitted to the jury in apportioning negligence as between plaintiff and defendant Sioux Tools. *Lines v. Ryan*, 272 N.W.2d 896 (Minn.1978). *See Conover v. Northern States Power Co.*, 313 N.W.2d 397 (Minn.1981) (defendant did not elect to bring in employer as a third-party defendant but employer's fault was nevertheless submitted to jury).

Whether a plaintiff would do better on the comparative fault question with more or fewer defendants in the case is a question that varies with the circumstances and the settlement and trial strategy of every case, whether or not workers' compensation is involved. As the dissent concedes, it is "pure speculation" whether plaintiff would have done better without the employer in the case. We can only set the rules as fairly as we can for all parties to the litigation and then let the parties develop their own trial strategy with these rules in mind.[4] *Lambertson* did not disturb the rules for finding fault, only how liability based on fault that was found by the jury was to be allocated between defendants.

Here, as the dissent points out, a plaintiff, even though less than 50% at fault, does not recover. The dissent finds this to be an illogical or improper result. But

---

4. Thus, in this case Bayliner's counsel, having a subrogation claim, did not argue plaintiff's negligence or damages but only that Bayliner was not at fault and Sioux Tools was. Neither did plaintiff's counsel argue Bayliner's negligence.

there was more than the plaintiff and one defendant in this lawsuit. In any multiparty litigation, the situation is always present that the plaintiff may or may not recover when less than 50% at fault. The policy involved is that generally the fairest rule for all concerned is to take the fault of all parties contributing to cause the injury at 100% and then compare.[5]

The dissent's argument, really, is that there should be aggregation of fault in this case, but since this is not workable, defendant Sioux Tools should pay plaintiff 20% of the damage award since it was 20% at fault, even though this is less fault than plaintiff's. This converts the argument for aggregation to one for pure comparative fault. It may be that there are instances in addition to *Krengel* where aggregation of fault would be appropriate, but this is not one, and we do not believe, in view of the plain wording and history of section 604.01, that we should engraft a pure comparative fault exception to that statute.

Affirmed.

TODD, Justice (dissenting).

I would reverse the result in this case. The plaintiff, Mae E. Cambern, was injured at work while operating a drill press manufactured by the defendant Sioux Tools, Inc. Cambern brings action against Sioux Tools who in turn interplead the employer, Bayliner Boats as a third party defendant. Although Cambern could not sue her employer, Sioux Tools had the right to interplead Bayliner under our decision in *Lambertson v. Cincinnati Corp.*, 312 Minn. 114, 257 N.W.2d 679 (1977). The *Lambertson* doctrine needed to be established to correct inequities which had become established in our tort law. However, as illustrated by this case, in making the needed corrections under *Lambertson*, we have now created a new inequity.

Prior to *Lambertson*, the employer, Bayliner Boats, would not have been a party. Admittedly, it would be pure speculation to assume what distribution of negligence a jury would have made between the plaintiff, Cambern, and the defendant, Sioux Tools. Nevertheless, if the plaintiff had been 50% or less at fault she would have been the prevailing party and recovered damages. Here, following the principles of *Lambertson*, although she is less than 50% negligent, she is not the prevailing party and recovers nothing. I cannot accept this or logically reconcile such a result.

I would propose as a solution to this unique problem that Sioux Tools, Inc. would be responsible for 20% of the total damage award of $100,000 or the sum of $20,000. I would award this to Cambern since it is less than the $65,000 she was entitled to having been found 35% negligent. I would not allow any subrogation rights to Bayliner Boats unless it had paid over to Cambern more than $45,000 in Worker's Compensation Benefits since its percentage of fault was 45%. If Bayliner had not paid out $45,000 in benefits, I would allow it a future credit of $20,000 in benefits due, less deductions allowed by statute to the employee, after it had paid out $45,000 in benefits.

I would reverse and remand with instructions to enter judgment as set forth above.

YETKA, Justice (dissenting).

I join in the dissent of Justice Todd.

---

5. Of course, the defendants are jointly and severally liable to plaintiff. Thus in *Jack Frost v. Engineered Building Components, Inc.*, 304 N.W.2d 346 (Minn.1981), the jury apportioned causal negligence 30% to plaintiff Jack Frost, 15% to defendant Engineered Building Components, and 55% to defendant Hydro-Air. Hydro-Air, although only 55% at fault, paid 70% of the damages to plaintiff. In other words, Hydro-Air had to pay not only for its own fault but for Engineered Building Components' as well.