Gaylord ERICKSON, et al.

v.

WHIRLPOOL CORP., et al.

Civ. No. 3–84–450.

United States District Court,
D. Minnesota,
Third Division.

March 14, 1990.

John C. McNulty and Marcy S. Wallace, McNulty & Wallace, St. Paul, Minn., and Neut L. Strandemo, Sutherland & Strandemo, Inver Grove Heights, Minn., for plaintiffs.

Gerald M. Linnihan, Jardine, Logan, & O'Brien, St. Paul, Minn., and C. Arthur Wilson, Jr., and Michael R. Borasky, Eckart, Seamans, Cherin & Mellott, Pittsburgh, Pa., for defendant Mobay Corp.

Chris R. Kabella and John Harens, Moore, Costello & Hart, St. Paul, Minn., for defendant Union Carbide Corp.

ROSENBAUM, District Judge.

Plaintiff is a former employee of Whirlpool, Inc., who claims he suffered a job related permanent injury to his lungs. He claims that this injury resulted from on-the-job exposure to toluene diisocyanate (TDI). The parties do not contest the fact that the TDI which allegedly caused the injury was manufactured and supplied by defendants Union Carbide and Mobay.

After a four week trial, liability and damage questions were submitted to the jury on special interrogatories. The parties jointly agreed, without objection, to the form of verdict and the special interrogatories. The final series of questions on the verdict called upon the jury to apportion, among the plaintiff, Whirlpool,[1] and the TDI suppliers, each one's percentage of fault for any injury sustained by the plaintiff.

The jury returned the following percentages as their verdict: plaintiff, 20%; Whirlpool, 56%; Union Carbide, 12%; Mobay, 12%.

Plaintiff contends the fault of Union Carbide and Mobay should be aggregated, thus making the chemical-supplying defendants 24% liable, *in toto.* This 24% fault would then be larger than the plaintiff's own 20% of fault. Under plaintiff's theory, such an aggregation would permit plaintiff to recover 80% of the damages determined by the jury.[2] In support of his asserted entitlement to aggregation, plaintiff claims to rely on the Minnesota comparative fault statute, Minnesota Statutes, § 604.01, and on the theory of alternative liability.

Defendants, not surprisingly, disagree, arguing Minnesota law does not permit aggregation of multiple defendants' fault. As a result of the jury verdict, defendants contend plaintiff is entitled to no recovery.

*Analysis*

It is clear that in this case the Court must apply state law as declared by statute or by the Supreme Court of the State of Minnesota. *See Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). When such law has been elucidated by the state's Supreme Court, this Court's task is limited—it " 'is not to formulate the legal mind of the state, but merely to ascertain and apply it.' " *Stratioti v. Bick,* 704 F.2d 1052, 1054 (8th Cir. 1983) (*quoting R.W. Murray Co. v. Shatterproof Glass Corp.,* 697 F.2d 818, 826 (8th Cir.1983)). But in the absence of a definitive Minnesota Supreme Court decision, this Court is obligated to determine the ruling that the Minnesota Supreme Court would adopt. *Meredith v. City of Winter Haven,* 320 U.S. 228, 234, 64 S.Ct. 7, 11, 88 L.Ed. 9 (1943); *Harlow v. Ryland,* 172 F.2d 784, 786 (8th Cir.1949); *Wilson v. Colonial Penn Life Ins. Co.,* 454 F.Supp. 1208, 1211 n. 4 (D.Minn.1978).

I. Comparative Fault Statute

Minnesota's comparative fault statute, § 604.01, subdivision 1, provides in relevant part:

---

1. Plaintiffs' claims against Whirlpool were dismissed by order of the Honorable Harry H. MacLaughlin, dated October 7, 1985.

2. The jury awarded $88,900 in damages.

Contributory fault shall not bar recovery in an action by any person or the person's legal representative to recover damages for fault resulting in death or in injury to person or property, if the contributory fault was not greater than the fault of the person against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of fault attributable to the person recovering.

Minnesota Statutes, § 604.01, subdivision 1. The issue before this Court is whether "the fault of the person against whom recovery is sought" should be interpreted to include aggregation of fault of multiple defendants. Clearly, under the percentages calculated by the jury, if defendants' fault is combined, plaintiff will recover. If not, plaintiff takes nothing.

Plaintiff contends that this particular question has not been addressed by the Minnesota Supreme Court and this Court is, therefore, free to craft a rule which will permit the aggregation of defendants' liability. To the extent that Minnesota's courts have not ruled on this precise scenario, plaintiff is correct. The Court, however, finds that plaintiff's view of the Minnesota Supreme Court's general interpretation of § 604.01, subdivision 1, is mistaken.

As a general rule, Minnesota law is perfectly clear: the fault of multiple defendants is not to be aggregated pursuant to the comparative fault statute. *Cambern v. Sioux Tools, Inc.*, 323 N.W.2d 795, 798 (Minn.1982). The Supreme Court has declined to combine liability even in instances similar to this in which the defendants' duty to the plaintiff may overlap in time. *Id.*

The sole exception to this settled rule, specifically delineated by the Minnesota Supreme Court, is the joint adventure or joint enterprise exception. As defined by the Minnesota courts, a joint enterprise between defendants has four elements: (1) contribution of money, time, property, or skill in a common undertaking; (2) joint proprietorship and control; (3) sharing of profits; and (4) existence of an express or implied contract. *Krengel v. Midwest Automatic Photo, Inc.*, 295 Minn. 200, 203 N.W.2d 841, 847 (Minn.1973). When these preconditions are present, the Minnesota Supreme Court has combined liability, noting:

In a joint adventure, the individual defendants are jointly liable as a unit because of their mutual undertaking for a common purpose and their right of direction and control over the enterprise, even though there is no actual physical control or such control was never exercised.

*Id.* 203 N.W.2d at 846. In other words, "[t]he total effect of the [four] factors is to create a common entity whose members, for liability purposes, are indistinguishable, and which surely conforms to the prerequisites of 'joint duty.'" *Id.* 203 N.W.2d at 847.

To satisfy the joint liability requirements, the defendants must engage in more than identical acts, *Cambern*, 323 N.W.2d at 791, and their duties must be more than concurrent. *Marier v. Memorial Rescue Service, Inc.*, 296 Minn. 242, 207 N.W.2d 706, 709 (Minn.1973). Absent satisfaction of the four factors posited by Minnesota's highest court, expansion of the rule of aggregation is impermissible. *Id.* 207 N.W.2d at 709.

Based upon the facts adduced at trial, the Court concludes the requisite joint venture is wholly absent here. As a preliminary matter, plaintiff did not plead a joint enterprise by defendants. Defendants were named in the same counts, but nowhere is there an allegation of concerted activity by Union Carbide and Mobay. The evidence did demonstrate that Union Carbide and Mobay may have sold TDI concurrently to Whirlpool during a brief period. But the evidence is that, for all practical purposes, defendants supplied TDI in serial fashion. There was no sign or indication of a connection between the parties' independent sales—they were, in fact, active competitors for Whirlpool's business. The trial revealed no evidence whatsoever which would satisfy any of the four criteria re-

quired by the Minnesota Supreme Court.[3] This Court declines an invitation to advance the joint venture theory of liability beyond the clearly established parameters set by the Minnesota Supreme Court.

Plaintiff's request to extend the aggregation rule absent satisfaction of the four part test must fail for additional reasons. The Minnesota Supreme Court, itself, has indicated any expansion of § 604.01 may not be accomplished through judicial fiat (let alone through the declaration of this Court sitting in diversity). The Minnesota court made clear that the state legislature is the better forum in which to effect such a policy change.[4] *Marier*, 207 N.W.2d at 709. The wisdom of this view is reflected in the fact that the workers' compensation system, which is deeply implicated in this matter,[5] embodies necessary "compromise[s]" and it would be inappropriate "to try to counteract the system's consequences by creating [an additional] exception to § 604.01." *Cambern*, 323 N.W.2d at 799.

The Minnesota Supreme Court has anticipated many of plaintiff's arguments by noting that these established rules will affect a plaintiff's pleading and trial strategy. *Cambern*, 323 N.W.2d at 799. The Supreme Court has indicated that:

> Whether a plaintiff would do better on the comparative fault question with more or fewer defendants in the case is a question that varies with the circumstances and the settlement and trial strategy of every case.... We can only set the rules as fairly as we can for all parties to the litigation and then let the parties develop their own trial strategy with these rules in mind.

*Id.* (footnote omitted).

Plaintiff argues that failure to aggregate will inflict a harsh result, particularly since Erickson accounted for only 20% of the total liability. Yet, the law of Minnesota contemplates that "[i]n any multiparty litigation, the situation is always present that the plaintiff may or may not recover when less than 50% at fault."[6] *Id.* at 800.

As a fallback, plaintiff suggests that Minnesota's elucidated position falls victim to a *reducto ad absurdum:* if there were a huge number of defendants, a plaintiff with any fault would be mathematically barred from any recovery. Plaintiff suggests, first, that this is intuitively unreasonable; and, second, that the presence of multiple defendants is a fortuity which ought not to inure to the defendants' benefit.

Neither of plaintiff's suggestions is valid. The result is not intuitively unreasonable since the rationale behind the rule is that a plaintiff's fault, if any exists, must be compared to each defendant's ultimate liability. There is nothing intellectually bothersome about a plaintiff who is, in fact, more at fault than each individual defendant and who may, therefore, be unable to recover as to every defendant. The argument is no less bothersome than the alternate, presumably the plaintiff's, thesis: that a defendant of very small fault should be required to combine its fault with that of another and unrelated co-defendant in order to make the more blameworthy

---

**3.** The fact that, at trial, defendants conducted a joint defense is irrelevant. Multiple defendants may undertake joint tactics simply because a lack of liability on the part of one defendant may impact favorably upon the liability of others. It is for the plaintiff to prove joint enterprise liability. *See Cambern v. Sioux Tools, Inc.* 323 N.W.2d 795, 798 (Minn.1982); *Krengel v. Midwest Automatic Photo, Inc.,* 295 Minn. 200, 203 N.W.2d 841, 847 (1973). Defendants' trial strategy will not suffice to create the necessary concerted activity.

**4.** In 1985, the Minnesota legislature refused to adopt a statute which would have expressly pro-

vided for aggregated liability of multiple defendants. S.F. No. 560, H.F. No. 984, 74th Minn. Leg., 1985 Sess. *See generally* M. Steenson, *The Fault With Comparative Fault: The Problem of Individual Comparisons in a Modified Comparative Fault Jurisdiction,* 12 William Mitchell L.Rev. 1, 13–15 (1985).

**5.** See Judge MacLaughlin's order of October 7, 1985.

**6.** Minnesota has not adopted a pure comparative fault exception to § 604.01. *Cambern*, 323 N.W.2d at 800.

plaintiff "whole."[7]

Finally, plaintiff was well aware of the fact that there were two suppliers in this case. Plaintiff knew of this fact before he commenced the action. Proof of duration of supply and date of injury is a necessary part of plaintiff's case. The jury here concluded that, as to plaintiff, Union Carbide was 12% liable during its sales and Mobay was 12% liable during its supply period. To the extent the special verdict form failed to take into account the switch of suppliers, the Court again notes plaintiff's proposed verdict form was submitted at his request.[8]

## II. Alternative Liability

■ At oral argument plaintiff offered a second theory of aggregation. Plaintiff suggests this is an appropriate case for application of the rule in *Summers v. Tice,* 33 Cal.2d 80, 199 P.2d 1 (1948). The rule in *Summers*—otherwise known as the theory of alternative liability—has been incorporated into § 433(B)(3) of the Second Restatement of Torts:

> Where the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one has caused it, the burden is upon each such actor to prove that he has not caused the harm.

Restatement (Second) of Torts, § 433(B)(3). The implicit requirements for shifting the burden of proof are (1) all defendants must have acted tortiously; (2) the plaintiff must have been injured by the conduct of a defendant, so all of the defendants must be before the Court, and (3) plaintiff, through no fault of his own, is unable to identify which defendant caused the injury. *See Bixler by Bixler v. Avondale Mills,* 405 N.W.2d 428, 430 (Minn.App.1987).

The general effect of the rule in *Summers* is to shift the burden of proof regarding the identity of the actual tortfeasor. There is sparse case law regarding the theory in Minnesota. It has been cited, however, in support of imposing joint and several liability upon multiple defendants under certain circumstances. The Minnesota Supreme Court has used *Summers* in cases involving separate and distinct, but functionally simultaneous, automobile accidents. *Mathews v. Mills,* 288 Minn. 16, 178 N.W.2d 841, 844 (1970). The Supreme Court, addressing chain accident cases, held:

> We are inclined to the view that the proper rule to be applied when the question of apportionment arises in multiple-collision cases is the "single injury" or "single indivisible injury" rule, which is succinctly stated in *Ruud v. Grimm,* 252 Iowa 1266, 1272, 110 N.W.2d 321, 324: " * * * [W]here two or more persons acting independently are guilty of consecutive acts of negligence closely related in point of time, and cause damage to another under circumstances where the damage is indivisible, i.e., it is not reasonably possible to make a division of the damage caused by the separate acts of negligence, the negligent actors are jointly and severally liable."

*Id.* The Court offered, as *obiter,* that:

> This court, although never having expressly faced the question, has indicated that if it were confronted with a case in which two persons, acting independently of one another, negligently inflict harm upon a third person, such injury being incapable of division, it would hold both tortfeasors jointly and severally liable.

*Id.* Addressing the difference between concurrent liability negligence of the type discussed in Part I, the Minnesota Supreme Court reasoned:

---

**7.** The record will reveal that the jury's fault-findings are not without some support. The plaintiff testified that he had received some warnings of the risks of TDI and, thereafter, declined to use protective devices and available breathing apparatus. Further, plaintiff has been exposed to over 50 "pack years" of unfiltered cigarette smoking. A "pack year" is a medical construct indicating one year of package-per-day smoking.

**8.** The transcript will reveal that the Court proposed to suggest an alternate form of special verdict. The record will reveal this suggestion was rejected by both the plaintiff and the defendants.

[H]ad both defendants been found negligent, [we] would adopt the following rule as set forth in Shearman & Redfield, Negligence (6 ed.) § 122:

"Concurrent, as distinguished from joint negilgence [sic], arises where the injury is proximately caused by the concurrent wrongful acts or omissions of two or more persons acting independently. That the negligence of another person than the defendant contributes, concurs or cooperates to produce the injury is of no consequence. Both are ordinarily liable. And unless the damage caused by each is *clearly separable*, permitting the distinct assignment of responsibility to each, each is liable for the entire damage. The degree of culpability is immaterial."

*Id.* (emphasis original).

■ On its face this language bodes well for plaintiff, but careful analysis reveals that it is fatal to his position. The initial question, as posed by the Minnesota Supreme Court, is whether the defendants have been found negligent. Under the comparative fault rule in Minnesota, a defendant will be considered liable—negligent—only if the defendant's percentage of liability is greater than the plaintiff's. Here, neither defendant's liability has been found to be greater than plaintiff's. The only way he can claim that defendants' liability is greater is if he aggregates their liability. His argument is circular: added together their liability is greater than his, therefore, he is permitted to aggregate their fault.

As noted, the primary impact of *Summers* is to shift the burden of proof to defendants. Plaintiff has never suggested that this case should be submitted to the trier of fact in this posture. No proof was adduced nor argument advanced on this issue. The Court will not permit a second bite at an altogether different apple. The case was heard on the theories plaintiff advanced—he is bound by the result. On the evidence in this case and the verdict of the jury, the Court finds that the rule in *Summers* will not permit the aggregation of defendants' fault and the comparison of defendants' aggregate fault with that of plaintiff's.

Accordingly, IT IS ORDERED that:

1. Plaintiff's motion for aggregation of liability is denied.

2. Judgment is, therefore, entered in favor of defendants.

LET JUDGMENT BE ENTERED ACCORDINGLY.