BJORKMAN, Judge
In this appeal from judgment following a jury trial on personal-injury claims arising out of a workplace accident, appellant asserts that the district court erred by (1) applying Minn. Stat. § 604.02 to reduce the judgment entered against respondent based on the jury's allocation of fault to appellant's employer, who is immune from tort liability under the workers' compensation *339 act and (2) offsetting against the past wage-loss award part of a lump-sum workers' compensation settlement received by appellant. Because we agree that the district court erred in both respects, we reverse and remand for recalculation of the judgment to be entered against respondent.
FACTS
Appellant Frederick Fish suffered workplace injuries while on loan by his employer, Albany Manufacturing, Inc., to Wells Concrete Productions Company (Wells). Fish was injured while working aboard a flatbed trailer being pulled by a semi-tractor driven by an employee of respondent Ramler Trucking, Inc. Pursuant to the loaned-servant agreement, Albany's insurer paid workers' compensation benefits to Fish. Fish received 130 weeks of temporary total disability (TTD) benefits totaling $48,560.68. He also received $2,245 in permanent partial disability (PPD) benefits and $125,744.18 in medical-expense benefits. And he settled the balance of his workers' compensation claim for a lump sum of $79,755 (the lump-sum settlement) and $13,000 in attorney fees.
After settling his workers' compensation claim, Fish sued Ramler for negligence; Ramler brought a third-party action against Albany and Wells. Ramler, Albany, and Albany's insurer settled their respective contribution and subrogation claims before trial in a "reverse-Naig " agreement.[1]
The case was tried to a jury, which found Wells, Ramler, and Fish causally negligent and apportioned fault 75% to Wells, 20% to Ramler, and 5% to Fish. The jury awarded damages of $125,000 in past pain, disability, and emotional distress; $108,288 in past health-care expenses; $105,000 in lost wages; $72,500 in future, pain, disability, and emotional distress; $16,552.54 in future health-care expenses; and $100,000 in loss of earning capacity. Following the verdict, the district court held a hearing and issued an order reducing the damages awarded based on the amount of workers' compensation benefits Fish received and calculating the judgment to be entered against Ramler.
Relevant to this appeal, the district court offset against the $105,000 past wage-loss award not only the $48,560.68 in TTD benefits and $2,245 in PPD benefits Fish received, but also $38,101.08 of his lump-sum settlement, based on the district court's calculation of TTD benefits Fish would have received through the date of trial but for the settlement.[2] After reducing the damages awarded to reflect workers' compensation payments, the district court further reduced the awards by 5% based on Fish's percentage of fault. From the remaining $278,913.58, the district court calculated 20%-Ramler's percentage of fault-and ordered judgment against Ramler in the amount of $55,782.72. Fish appeals.
ISSUES
I. Did the district court err by reducing the damages awarded based on *340 the percentage of fault allocated to Wells?
II. Did the district err in calculating offsets based on workers' compensation benefits received by Fish?
ANALYSIS
In an appeal from judgment, "[i]n the absence of a motion for a new trial, our scope of review includes substantive legal issues properly raised to and considered by the district court, whether the evidence supports the findings of fact, and whether those findings support the conclusions of law and the judgment." City of Minneapolis v. Minneapolis Police Relief Ass'n , 800 N.W.2d 165, 172 (Minn. App. 2011) (citing Alpha Real Estate Co. of Rochester v. Delta Dental Plan of Minn. , 664 N.W.2d 303, 309-10 (Minn. 2003) ; Gruenhagen v. Larson , 310 Minn. 454, 246 N.W.2d 565, 569 (1976) ). We review de novo the district court's interpretation of statutes and application of the law. Cocchiarella v. Driggs , 884 N.W.2d 621, 624 (Minn. 2016) ; Harlow v. State, Dep't of Human Servs. , 883 N.W.2d 561, 568 (Minn. 2016).
I. Minn. Stat. § 604.02 does not apply to reduce the damages awarded to Fish based on the percentage of fault allocated to Wells.
Fish's primary argument on appeal is that the district court erred by reducing the judgment against Ramler by the percentage of fault allocated to Wells. The district court reasoned that the reduction was required under Minn. Stat. § 604.02 and the supreme court's decision in Staab v. Diocese of St. Cloud , 813 N.W.2d 68 (Minn. 2012). Fish asserts that the district court should have applied Lambertson and Minn. Stat. § 176.061, subd. 11, to hold Ramler liable for the entire damages awarded, less Fish's percentage of fault. We agree with Fish.
The Minnesota Workers' Compensation Act (act) provides an employee's exclusive remedy against his employer for workplace injuries. Minn. Stat. § 176.031 (2018) (exclusivity provision). But the act allows employees to bring civil actions against third-party tortfeasors, subject to the employer's right of subrogation. Minn. Stat. § 176.061, subd. 5(b) (2018) (subrogation provision); see also Conwed Corp. v. Union Carbide Chems. & Plastics Co. , 634 N.W.2d 401, 406 (Minn. 2001) (summarizing subrogation rights created and preserved by the act). Our supreme court has recognized that the combination of the exclusivity and subrogation provisions creates an inequitable situation in which a third-party tortfeasor could be required to "bear the burden of a full common-law judgment despite possibly greater fault on the part of the employer." Lambertson , 257 N.W.2d at 684. This is so because there is no common liability between the third party and an employer, and thus no legal basis for allowing contribution. Hendrickson v. Minn. Power & Light Co. , 258 Minn. 368, 104 N.W.2d 843, 849 (1960), overruled in part on other grounds by Tolbert v. Gerber Indus., Inc. , 255 N.W.2d 362 (Minn. 1977).
Based in part on this inequity, the supreme court in Lambertson fashioned an equitable remedy, holding that a third-party tortfeasor may seek contribution from an employer, in proportion to the amount of causal fault allocated to the employer by the jury, up to the amount of workers' compensation benefits paid or to be paid. 257 N.W.2d at 684. The supreme court reaffirmed that "there is no common liability to the employee in tort," but could not "find any continuing persuasive force" in Hendrickson 's holding that contribution is foreclosed. Id. at 688.
The Lambertson court turned to equity, explaining that "[c]ontribution is a flexible *341 equitable remedy designed to accomplish a fair allocation of loss among parties. Such a remedy should be utilized to achieve fairness on particular facts, unfettered by outworn technical concepts like common liability." Id. In other words, the Lambertson court concluded that contribution should be available to a third-party tortfeasor notwithstanding the absence of common liability under the law. But the Lambertson court also recognized the competing policy of limiting employer liability under the act. Id. Accordingly, the supreme court held that a third party is "entitled to contribution from an employer in an amount not to exceed the compensation benefits paid or to be paid by the employer to the employee because of [the] accident." Id. at 681 (syllabus by the court).
In subsequent cases, the supreme court reaffirmed and further explained the equitable contribution remedy it articulated in Lambertson . See Kempa v. E.W. Coons Co. , 370 N.W.2d 414 (Minn. 1985) ; Hudson v. Snyder Body, Inc. , 326 N.W.2d 149 (Minn. 1982) ; Cambern v. Sioux Tools, Inc. , 323 N.W.2d 795 (Minn. 1982) ; Johnson v. Raske Bldg. Sys., Inc. , 276 N.W.2d 79 (Minn. 1979). Johnson held that Minn. Stat. § 176.061, subd. 6, and Lambertson govern the allocation of damages "[w]here the employer who has paid workers' compensation benefits and a third party are both negligent." 276 N.W.2d at 80. And Johnson outlined a procedure to effectuate the contribution remedy. Id. Cambern held that an employer's fault cannot be aggregated with the third-party tortfeasor's fault for purposes of determining whether the employee could recover under the then-applicable comparative-fault statute, reasoning that " Lambertson did not disturb the rules for finding fault, only how liability based on fault that was found by the jury was to be allocated between defendants." 323 N.W.2d at 799. Hudson held that "[a] third party tortfeasor may recover contribution from a negligent employer whether or not the employee, in a direct suit, would have been barred from recovery under the comparative fault statute," reasoning that "[t]he comparative-fault statute does not affect the apportionment procedure set out in Johnson ." 326 N.W.2d at 151 (syllabus by the court), 157. Kempa reaffirmed the Lambertson procedure and provided further guidance for calculating the contribution due from an employer in cases where the employee is entitled to receive future workers' compensation benefits. 370 N.W.2d at 419-20.
In short, Lambertson and its progeny make clear that the procedure for allocating damages between an employer and a third party when workers' compensation benefits have been paid is distinct from a comparative-fault apportionment under Minn. Stat. § 604.02. In its most recent case, Kempa , the supreme court explicitly stated that "the statutory apportionment of damages, section 604.02, does not govern an employer's contribution or an offset to an employer's subrogation claim" and that the employer and the third party are 'neither jointly liable nor jointly and severally liable to [the employee].' " Id. at 420. This is so even though the allocation under Lambertson relies upon the jury's comparative-fault findings. See id. at 421 ("Nevertheless, comparative fault has constituted the basis for the modified apportionment of damages in Lambertson and its progeny.").
Ramler argues that Lambertson is no longer good law, pointing to three legal changes: a 2000 amendment to the act; a 2003 amendment to section 604.02 ; and the supreme court's decision in Staab . We address each of these legal developments in turn.
*342 A. 2000 amendment to the workers' compensation act
The 2000 amendment to the act adopts the contribution procedure created by Lambertson . It also permits an employer to "avoid contribution exposure by affirmatively waiving, before the selection of the jury, the right to recover workers' compensation benefits paid and payable, thus removing compensation benefits from the damages payable by any third party." See 2000 Minn. Laws ch. 447, § 8, at 1049, codified at Minn. Stat. § 176.061, subd. 11. Ramler argues that, under the second provision, "when the employer is removed from a case, either by waiving and walking or settling, they are extricated from any involvement in the payment of the award" and the matter becomes simply a civil action subject to the application of section 604.02. We disagree. Although the 2000 amendment to Minn. Stat. § 176.061 does provide a method through which an employer may avoid the Lambertson / Johnson allocation procedure following a civil trial, nothing in that amendment alters the application of section 604.02 in a lawsuit involving defendants that have no common liability to the plaintiff. Accordingly, we cannot conclude that the 2000 amendment displaces Lambertson .
B. 2003 amendment to section 604.02
In 2003, the legislature amended section 604.02 to create a general rule of several tort liability, limiting joint and several liability to four enumerated circumstances. See 2003 Minn. Laws ch. 71, § 1, at 386; see also Staab , 813 N.W.2d at 77-78 (noting that until the 2003 amendment, "the statute provided that tortfeasors' contributions shall be in proportion to their percentage of fault but that each is jointly and severally liable for the whole award" (quotation omitted) ). After this amendment, as relevant here, the apportionment-of-damages statute provides that "[w]hen two or more persons are severally liable, contributions to awards shall be in proportion to the percentage of fault attributable to each ...." Minn. Stat. § 604.02. Ramler contends this amendment makes Minnesota a "true comparative fault state" and that, because none of the enumerated joint liability circumstances exist, its liability to Fish is limited to 20% of the net verdict.
In Decker v. Brunkow , we rejected a similar argument regarding the impact of amendments to section 604.02 on the Lambertson allocation procedure. 557 N.W.2d 360, 362 (Minn. App. 1996), review denied (Minn. Feb. 26, 1997).[3] Decker tripped and fell while working for her employer in a building Brunkow owned. The jury apportioned 5% of the fault to Brunkow and the remainder to Decker's employer. Brunkow argued that the 1988 amendments to section 604.02 limited her liability to 5% because a jointly liable "person whose fault is 15 percent or less is liable for a percentage of the whole award no greater than four times the percentage of fault." Id. We framed the essential question as "whether the '15% x 4' rule of amended section 604.02 modifies the contribution *343 rule in Lambertson ." Id. And we held that it did not, relying on Lambertson 's recognition that there is no common liability between an employer and a third-party tortfeasor and Kempa 's holding that section 604.02 does not govern an employer's contribution because a tortfeasor and an employer are neither jointly liable nor jointly and severally liable to the employee. Id. Absent common liability, we concluded that "[a]mended section 604.02... does not apply where the third-party tortfeasor seeks contribution from a negligent employer who is exclusively liable under the workers' compensation law." Id. We further observed that the legislative history provides no indication that the legislature considered "the conflict between the workers' compensation law and contribution actions." Id.
For similar reasons, we reject Ramler's argument that the 2003 amendment to section 604.02 displaces Lambertson . First and foremost, as amended in 2003, the statute applies "[w]hen two or more persons are severally liable." Minn. Stat. § 604.02 (emphasis added). Because employers are not liable to employees in tort, there is no basis for common liability, and section 604.02 does not apply. The Lambertson procedure is distinct from apportionment of damages under section 604.02, and that statute, while it informs the Lambertson procedure, does not control. See Lambertson , 257 N.W.2d at 689 ; see also Kempa , 370 N.W.2d at 421 ; Hudson , 326 N.W.2d at 157 ; Cambern , 323 N.W.2d at 799 ; Johnson , 276 N.W.2d at 80. Indeed, the supreme court adopted the Lambertson procedure because there was no basis under existing law to limit the third party's exposure as the sole party liable in tort. See Lambertson , 257 N.W.2d at 689 (explaining that procedure was "solution we consider most consistent with fairness and the various statutory schemes before us").
Second, the legislature has not evinced an intent to supplant Lambertson . Both the supreme court and this court have recognized the legislature's prerogative to provide a different procedure than the one created by Lambertson . See id. ("This problem is, in large part, a legislative one which demands a comprehensive solution in statutory form."); see also Decker , 557 N.W.2d at 362 (noting that no change had been made since Lambertson and holding that Lambertson rule applies "until the legislature chooses to address the conflict"). The legislature did not respond to Lambertson until the 2000 amendments, through which it adopted the Lambertson rule, subject to the employer's right to avoid contribution exposure by waiving its subrogation claim before trial. See 2000 Minn. Laws ch. 447, § 8, codified at Minn. Stat. § 176.061, subd. 11. Based on the 2000 amendments, we would expect any further legislative changes to the Lambertson procedure to be codified in the act. Accordingly, as in Decker , we have no basis to conclude that the 2000 legislative amendments to section 604.02 were intended to impact the Lambertson procedure.
C. Staab v. Diocese of St. Cloud
Staab was injured when she fell from her wheelchair while leaving a school operated by the defendant Diocese. Staab , 813 N.W.2d at 71. The jury apportioned fault equally between the Diocese and Staab's husband, who was pushing the wheelchair at the time of the accident but was not a party to the lawsuit. Id. Staab contended that the Diocese was responsible for all of her damages because it was the only defendant. The supreme court rejected this argument, interpreting "persons" in the 2003 amendment to section 604.02 to mean "all persons who are parties to the tort, regardless of whether they are parties to the lawsuit." Id. at 77. The Staab court *344 explained that liability is created at the time a tort is committed, and exists "independent of any claim or civil action that arises from that liability." Id. at 73. Because the Diocese's fault, as determined by the jury, did not exceed 50%, it was not jointly liable for the damages awarded. Id . at 79 n.8.
Notably, in Staab , the plaintiff's injuries were caused by two persons, neither of whom was immune from tort liability. In other words, the tortfeasors shared common liability, such that section 604.02 applied. In this case, Wells is immune from liability under Minn. Stat. § 176.061, so no common liability ever arose. Nothing in Staab implicates Lambertson 's application in situations where, as here, there is no common liability-in tort or otherwise-between the parties.
In sum, we conclude that the district court erred by applying Minn. Stat. § 604.02 to reduce the damages awarded to Fish based on the percentage of fault allocated to Wells. On remand, the district court shall order judgment against Ramler for the full amount of the jury verdict, subject to appropriate offsets and less the 5% of fault allocated to Fish.[4]
II. The district court erred by offsetting $38,101.08 as duplicative of temporary total disability benefits.
When an employee settles his claim for workers' compensation benefits paid or payable, he retains the option to present to a jury all common-law damages, whether recoverable under the act or not; the district court must "deduct any awarded damages that are duplicative of workers' compensation benefits paid or payable." Minn. Stat. § 176.061, subd. 11. Fish argues that the district court erred by offsetting $38,101.08 of the lump-sum settlement against the jury's $105,000 past wage-loss award. More specifically, he asserts that the district court erred by treating the $38,101.08 as duplicative of TTD benefits because he had exhausted those benefits prior to the settlement. Ramler concedes that the district court erred, but argues that the award for past wage loss should nonetheless be reduced by $38,101.08 because that amount duplicates permanent total disability (PTD) benefits Fish received. Ramler essentially asserts that any error was harmless.[5]
In reducing the jury's damages awards for workers' compensation benefits paid, the district court considered $38,101.08 of the $79,755 lump-sum settlement to represent continuing TTD benefits at a rate of $373.54 per week. But Fish had exhausted his TTD benefits (receiving $48,560.68 over 130 weeks) before the settlement. See Minn. Stat. § 176.101, subd. 1(k) (2018) (terminating those benefits "when 130 weeks of temporary total disability compensation have been paid"). Thus, we *345 agree with the parties that the district court erred by offsetting $38,101.08 from the verdict. But we decline to address for the first time on appeal Ramler's arguments that $38,101.08 should nevertheless be offset as duplicative of PTD benefits. On remand, the district court shall determine whether the $38,101.08 duplicates PTD benefits and thus should be offset against the jury's verdict.
DECISION
The district court erred by applying Minn. Stat. § 604.02 to reduce the damages awards based on the percentage of fault allocated to Wells. The district court also erred by determining that $38,101.08 of the lump-sum settlement duplicated TTD benefits and reducing the past wage-loss award accordingly. We reverse and remand to the district court to enter judgment against Ramler consistent with this opinion.
Reversed and remanded.

" 'A reverse-Naig [v. Bloomington Sanitation , 258 N.W.2d 891 (Minn. 1977) ] settlement occurs when the tortfeasor settles potential subrogation claims for workers' compensation benefits with the employer and the employer's workers' compensation insurer.' " Johnson v. Princeton Pub. Utils. Comm'n , 899 N.W.2d 860, 863 (Minn. App. 2017) (quoting Sayre v. McGough Constr. Co. , 580 N.W.2d 503, 504 n.1 (Minn. App. 1998), review denied (Minn. Aug. 18, 1998) ).

The district court made other offsets and deductions that Fish does not challenge on appeal.

Ramler cites, and the district court relied on, a federal district court decision in Gaudreault v. Elite Line Servs., LLC . 22 F.Supp.3d 966 (D. Minn. 2014). The Gaudreault court rejected our decision in Decker , reasoning that it was "neither controlling nor persuasive." Id. at 980. Likewise, we are not bound by Gaudrealt , and do not find it persuasive. See TCI Bus. Capital, Inc. v. Five Star Am. Die Casting, LLC , 890 N.W.2d 423, 431 (Minn. App. 2017) ("A federal court's interpretation of Minnesota law is not binding on this court, though it may have persuasive value."). We are, however, bound by our own published decisions, as are Minnesota district courts. See State v. M.L.A. , 785 N.W.2d 763, 767 (Minn. App. 2010) ("The district court, like this court, is bound by supreme court precedent and the published opinions of the court of appeals ....").

Because we conclude that the district court erred by reducing the damages awarded against Ramler, we need not reach Fish's alternative argument that the district court erred in calculating the amount of the reduction. We note, however, the proper method would have been to determine each fault allocation based on the total damages awarded, rather than deducting the percentages sequentially (i.e., taking away 5% from the total award, then taking away 80% from the already-reduced award) as the district court appears to have done.

Ramler also asserts that the district court erred by failing to offset the $41,653.92 balance of the lump-sum settlement, resulting in Fish receiving $16,093.24 for past wage loss that should have been offset. But Ramler acknowledges that it did not file a notice of related appeal. See Minn. R. Civ. App. P. 106 ; City of Ramsey v. Holmberg , 548 N.W.2d 302, 305 (Minn. App. 1996), review denied (Minn. Aug. 6, 1996). Accordingly, we do not address this asserted error, nor will the $16,093.24 be at issue on remand.